**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| TRUSTMARK BANK,<br><br>Plaintiff,<br><br>v.<br><br>TIRE INSTALLATION, LLC, DEWAYNE MITCHELL, YOUNG FINANCIAL SOLUTIONS LLC, DEMETRIUS YOUNG FOSTER LEGACY TRANSPORTATION & LOGISTICS, INC. AND DAV*ID* B. FOSTER,<br><br>Defendants. | ) | Case No. 2:25-cv-02766-BCL-atc |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AS TO DEFENDANTS DAVID FOSTER AND
FOSTER LEGACY TRANSPORTATION & LOGISTICS, INC.**

Before the Court is Plaintiff Trustmark Bank's ("Trustmark") Motion for Summary Judgment as to Defendants David Foster ("Mr. Foster") and Foster Legacy Transportation & Logistics, Inc. ("Foster Legacy") Doc. 69. For the following reasons, Plaintiff's Motion is **GRANTED**.

## BACKGROUND

Mr. Foster owns Foster Legacy. Doc. 70 at 1. On January 29, 2025, Foster Legacy applied for and was approved for an unsecured line of credit from Trustmark in the amount of $40,010.00 to be used for business expenses. *Id*. On January 29, 2025, Foster Legacy executed a promissory note in favor of Trustmark in the original principal amount of $40,010.00, payable in monthly installments of interest with a final maturity date of February 1, 2026 ("Foster Legacy LOC Note").

*Id*. On the same day, Foster executed a guaranty agreement personally guaranteeing the Foster Legacy LOC Note ("Foster LOC Guaranty"). *Id*. at 2.

Two days later, on January 31, 2025, Foster Legacy applied to Trustmark to borrow $113,049.00 to purchase a Mercedes-Benz Sprinter cargo van. *Id*. To support its loan request, Foster Legacy provided Trustmark with a January 28, 2025 retail purchase agreement representing that Foster Legacy was purchasing the Foster Legacy Sprinter Van from Deez Auto Choice, LLC ("Deez Auto") for $121,432.36, having already paid a deposit of $8,383.36. *Id*. Trustmark made the purchase money loan, secured by the van, and Foster Legacy executed a promissory note in favor of Trustmark in the original principal amount of $113,224.00, payable in monthly installments of principal and interest with a final maturity date of August 30, 2030 ("Foster Legacy Van Note"). *Id*. at 2.

To secure the Foster Legacy Van Note, Foster Legacy executed a Commercial Security Agreement ("Foster Legacy Van Security Agreement") which granted Trustmark a security interest in the Foster Legacy Sprinter Van. *Id*. at 2-3. At Mr. Foster's instruction, Trustmark wired $113,049.00 to Deez Auto for Foster Legacy's purchase of the van. *Id*. at 3. On January 31, 2025, Mr. Foster executed a guaranty agreement personally guaranteeing the Foster Legacy Van Note ("Foster Van Loan Guaranty"). *Id*.

After making the purchase money loan, Trustmark learned that Deez Auto (the van seller that received the loan proceeds) is owned by defendant Demetrius Young. *Id*. Defendant Demetrius Young is also the owner of defendant Young Financial Solutions, LLC, another Trustmark borrower and supposed van buyer that defaulted on its van loan. *Id*. After loaning Foster Legacy $113,049 for the van purchase, Trustmark learned that Deez Auto purchased the Foster Legacy Sprinter Van from George Coleman Ford (an unrelated third party) for $50,000 on January 30,

2025-2 days after the supposed January 28 sale to Foster Legacy for $121,432.36 (a 143% markup). *Id*.

After learning this information, Trustmark accelerated the balance due on the Foster Legacy Van Note and the Foster Legacy LOC Note; demanded payment from both Foster Legacy as borrower and Mr. Foster as guarantor; and demanded turnover of the Foster Legacy Sprinter Van. *Id*. at 3-4. Foster Legacy quit making payments on both the Foster Legacy Van Loan and the Foster Legacy LOC and has refused to turn over the van. *Id*. at 4. Foster failed to pay Foster Legacy's loans pursuant to his guaranties. *Id*. at 4.

On January 31, 2025, the same day it received the van loan proceeds, Deez Auto paid a significant portion of the van loan proceeds ($48,965) back to Mr. Foster and his wife Tonya Foster, personally. *Id*. at 4. Foster Legacy failed to insure the Foster Legacy Sprinter Van as required by the Foster Legacy Van Security Agreement. *Id*.

As of July 15, 2025, the amount due on the Foster Legacy Van Loan was $108,415.25, consisting of a principal balance of $107,557.40 and interest of $857.85. *Id*. On July 17, 2025, a regular payment was made which reduced the principal balance to $106,116.48. *Id*. No further payments have been made. *Id*. at 4. The principal balance continues to accrue interest at a per diem rate of $21.0758862. *Id*.

To secure its collateral, Trustmark paid $281.44 in registration fees due for the Foster Legacy Sprinter Van because Foster Legacy did not do so. *Id*. at 5. As of July 15, 2025, the amount due on the Foster Legacy LOC was $12,500.62, consisting of a principal balance of $12,100, together with accrued interest of $400.52. *Id*. No further payments have been made. *Id*. The principal balance continues to accrue interest at a per diem rate of $2.92416667. *Id*.

Plaintiff filed the present Motion for Summary Judgment on July 6, 2026. Doc. 69. Defendants did not respond.

**LEGAL STANDARD**

Even where a party offers no timely response to a motion for summary judgment, the District Court may not use that as a reason for granting summary judgment "without first examining all the materials properly before it under Rule 56(c)." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). Therefore, even though the present motion for summary judgment is unopposed, this Court "must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *Id*. Because Defendants failed to respond, this Court "may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992). "If such evidence supports a conclusion that there is no genuine issue of material fact, the trial court should determine that the moving party has carried its burden, and" enter judgment accordingly.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Courts do not make credibility determinations or weigh the evidence when deciding a

motion for summary judgment. *See Martinez v. Cracker Barrell Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013).

**LEGAL ANALYSIS**

**I. Breach of Contract Claim**

**A.** As a preliminary matter, Tennessee law governs the contracts at issue. "[A] federal court sitting in diversity applies the choice-of-law rules of the state in which the court sits"—here, Tennessee. *Performance Contracting inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014). By default, "Tennessee follows the rule of *lex loci contractus*," which "provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014). A contractual choice-of-law provision will be enforced if executed in good faith for a reasonable, non-pretextual purpose, provided the chosen state has a material connection to the transaction. *Id*. Here, Defendants executed the contracts in Tennessee, and they have a choice of law provision calling for the application of Tennessee law to the extent not preempted by "federal law applicable to lender." Pursuant to the contracts, it is undisputed that Tennessee law governs. Docs. 71-2 at 2, 71-6 at 1, 71-7 at 4.

**B.** Under Tennessee law, Plaintiff must prove: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc.*, 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019).

*First*, it is undisputed that Plaintiff entered into enforceable contracts with Mr. Foster and Foster Legacy. "A contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence,

not against public policy and sufficiently definite to be enforced.'" *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005). "A party is presumed to know the contents of a contract he has signed." *Philpot v. Tennessee Health Mgmt., Inc.*, 279 S.W.3d 573, 581 (Tenn. Ct. App. 2007). "The law imparts a duty on parties to a contract to learn the contents and stipulations of a contract before signing it, and signing it without learning such information is at the party's own peril." *Id.*; *see also Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993) (internal citation omitted) ("It will not do, for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.").

The first contract was an unsecured line of credit documented by the Foster Legacy LOC Note signed by Mr. Foster on January 29, 2025. Doc. 71-2. The second contract[1] was the Trustmark loan for the purchase money for the Foster Legacy Sprinter Van which was also signed by Mr. Foster in January 2025. Docs. 71-6, 71-7. Without any opposition from Defendants, the facts and exhibits presented by Plaintiff indicate the existence of enforceable contracts entered into willingly by Mr. Foster.

*Second*, it is undisputed that Defendants breached the contracts. "A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties" which requires "examining the plain and ordinary meaning of the written words that are 'contained within the four corners of the contract.'" *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013).

Both contracts state the following shall constitute an event of default:

> **Payment Default.** Borrower fails to make any payment when due under this Note.
> **…**

[1] Both contracts included multiple documents signed by Mr. Foster, such as accompanying security agreements granting Plaintiff a possessory interest in the van and personal guarantees to secure the loans.

> **False Statements**. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false of misleading at any time thereafter.
>
> **Adverse Change**. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.
>
> **Insecurity**. Lender in good faith believes itself insecure.

Docs. 71-2 at 1, 71-6 at 1, 71-7 at 3. The Foster Legacy LOC Note also provides that it is an event of default if Foster Legacy "fails to comply with or to perform any other term, obligation, covenant or condition contained in *any other* agreement between [Trustmark] and [Foster Legacy]." Doc. 71-2 at 1 (emphasis added).

Here, it is uncontroverted that Defendants misrepresented both the purchase price of the vans and the recipient of the loan amount. Doc. 70 at 3. These material misrepresentations understandably called into question the value of the collateral pledged by Defendants and the prospect of payment, leading to a good faith belief Plaintiff was insecure. Therefore, Defendants were in breach of both the Foster Legacy LOC Note and the Foster Legacy Van Note.

*Third*, it is undisputed that Plaintiff has been damaged by the breach. Once Defendants were in default, Plaintiff was permitted to and did "declare the entire unpaid principal balance under [the contract] and all accrued unpaid interest immediately due" and take possession of the Foster Legacy Sprinter Van. Docs. 71-2 at 1, 71-6 at 1, 71-7 at 3. Defendants do not dispute that they have neither paid the note nor turned over the van. Doc. 70 at 4. And while the precise calculations will, as discussed below, await a later date, Plaintiff has identified seemingly uncontroverted evidence demonstrating that it has suffered monetary harm caused by Defendants' breaches. Doc. 70 at 4-5. Plaintiff has also incurred attorneys' fees and expenses which, according to the loan documents, it is permitted to recover. Docs. 71-2 at 1, 71-6 at 1, 71-7 at 4.

**C.** Mr. Foster also signed a guaranty for both the Foster Legacy LOC Note and the Foster Legacy Van Note in January 2025. Docs. 71-3, 71-11. Both guarantees state that "Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and Related Documents." Docs. 71-3 at 1, 71-11 at 1. "Indebtedness" is defined in the guaranty as follows:

> All of the principal amount outstanding from time to time and at any one or more times, accrued and unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorney's fees, arising from any and all debts, liabilities and obligations or every nature or form, not existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender ….

*Id*. Because Mr. Foster personally guaranteed the Foster Legacy LOC Note and the Foster Legacy Van Note, he is personally liable for all sums owed to Plaintiff on behalf of Defendant Foster Legacy. Mr. Foster presents no objections, and, in any event, is contractually barred from asserting defenses to his liability under the guaranty he knowingly signed. *Id*.

**D.** The Foster Legacy Van Security Agreement grants Plaintiff a security interest in the van and, following an event of default, allows Plaintiff to take possession. Doc. 71-7 at 3. Plaintiff also has the right "to enter upon the property of [Foster Legacy] to take possession of and remove the Collateral." *Id*. Finally, the security agreement allows Plaintiff to sell the van at a public auction or private sale where all expenses of such a sale become part of the debt Defendants owe Plaintiff. *Id*. Because Defendants defaulted on the Foster Legacy Van Note, as discussed *supra*, Plaintiff is entitled to possession of the van. Defendants do not dispute that Plaintiff has a present right to possession under the contract.

## **CONCLUSION**

Pursuant to the plain language of the contract and the summary judgment record before the Court, and bolstered by Defendants' failure to present their own view of the facts, Plaintiff's Motion for Summary Judgment as to Defendants David Foster and Foster Legacy Transportation & Logistics, Inc. (Doc. 69) is **GRANTED** with respect to the issue of Defendants' liability to Plaintiff.

**IT IS ORDERED** that within fourteen days of the entry of this Order, Plaintiff shall file a supplemental brief clarifying the specific remedies sought, including (A) a breakdown of the damages claimed up to the then-current date and any record or legal support for those damages, (B) a clear statement concerning which Defendant is responsible for the various damages, if there is a relevant difference concerning the Defendants' exposure; and (C) an explanation of any non-damages remedies, together with record and legal support, including an argument concerning the proper procedural mechanism for effectuating the remedy. In addition, if Plaintiff continues to seek costs and fees, within fourteen days of the date of this Order Plaintiff **SHALL** submit a motion, supported by any legal and record support, seeking such fees and costs (and any other expenses) and itemizing the amounts claimed. Defendants **SHALL** respond within fourteen days of Plaintiff's filing(s).

This matter is hereby **REFERRED** to the Magistrate Judge for purposes of: (1) conducting at the earliest available opportunity a hearing concerning the remedial issues discussed in the last paragraph (including but not limited to fees and costs), and (2) rendering a Report and Recommendation concerning the appropriate remedies in this case, including but not limited to the precise amounts of any damages awards.

**SO ORDERED**, this 14th day of August.

*s/Brian C. Lea*
BRIAN C. LEA

UNITED STATES DISTRICT JUDGE