**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| TRUSTMARK BANK,<br><br>Plaintiff,<br><br>v.<br><br>TIRE INSTALLATION, LLC, DEWAYNE MITCHELL, YOUNG FINANCIAL SOLUTIONS LLC, DEMETRIUS YOUNG FOSTER LEGACY TRANSPORTATION & LOGISTICS, INC. AND DAV*ID* B. FOSTER,<br><br>Defendants. | ) | Case No. 2:25-cv-02766-BCL-atc |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS DEMETRIUS YOUNG AND YOUNG FINANCIAL SOLUTIONS LLC**

Before the Court is Plaintiff Trustmark Bank's ("Trustmark") Motion for Summary Judgment as to Defendants Demetrius Young ("Mr. Young") and Young Financial Solutions LLC ("Young Financial"). Doc. 66. For the following reasons, Plaintiff's Motion is **GRANTED**.

**BACKGROUND**

Demetrius Young ("Young") owns Young Financial. Doc. 67 at 1. On December 24, 2024, Young Financial applied to Trustmark to borrow $148,195.25 to purchase a Mercedes-Benz Sprinter cargo van ("Young Financial Sprinter Van"). *Id*. at 1. To support its loan, Young Financial provided Trustmark with a December 23, 2024 retail purchase agreement representing that Young Financial was purchasing the Young Financial Sprinter Van from Auction Permit, LLC ("Auction Permit") for $167,519.40. *Id*. at 2. Trustmark made the purchase money loan, secured by the van,

and on December 24, 2024, Young Financial executed a promissory note in favor of Trustmark in the original principal amount of $148,370.25, payable in monthly installments of principal and interest with a final maturity date of December 25, 2031 (Young Financial Van Note"). *Id*.

To secure the loan, Young Financial also executed a Commercial Security Agreement ("Young Financial Van Security Agreement") pursuant to which Young Financial granted Trustmark a security interest in the Young Financial Sprinter Van. *Id*. At Young's instruction, Trustmark wired $148,195.25 to Auction Permit, for Young Financial's purchase of the Young Financial Sprinter Van. *Id*. at 3. On December 24, 2024, Young executed a guaranty agreement personally guaranteeing the Young Financial Van Note ("Young Van Loan Guaranty"). *Id*.

On December 24, 2024, Young Financial applied for and was approved for an unsecured line of credit from Trustmark in the amount of $40,010.00. *Id*. Young Financial executed a promissory note in favor of Trustmark dated December 24, 2024, in the original principal amount of $40,010.00 payable in monthly installments of interest with a final maturity date of December 24, 2026 (Young Financial LOC Note"). *Id*. On the same day, Young executed a guaranty agreement pursuant to which Young personally guaranteed the Young Financial LOC Note ("Young LOC Guaranty"). *Id*.

Young Financial failed to make the monthly payments on the Young Financial Sprinter Van Loan as they came due. *Id*. After making the loan, Trustmark learned from interviewing Young that Auction Permit (owned by defendant Dewayne Mitchell) never purchased the Young Financial Sprinter Van at all. *Id*. at 4. Trustmark also learned that Young, through another of his companies (Deez Auto Choice, LLC), received $74,000 of the loan proceeds from Auction Permit purportedly to customize the van, contrary to Young Financial's representations to Trustmark about needing the money to purchase the van. *Id*.

After learning this information, Trustmark accelerated the balance due on the Young Financial Van Note and the Young Financial LOC Note, as the loan documents permitted. *Id*. Both debts remain unpaid. *Id*.

As of July 15, 2025, the amount due on the Young Financial Van Loan was $131,502.70, consisting of a principal balance of $127,960.37, together with accrued interest of $3,542.33. *Id*. The principal balance continues to accrue interest, at a per diem interest rate of $25.4143513. *Id*. As of July 15, the amount due on the Young Financial LOC was $41,194.19, consisting of a principal balance of $40,100, together with accrued interest of $84.19. *Id*. The principal balance continues to accrue interest at a per diem rate of $8.33541667. *Id*.

Plaintiff filed the present Motion for Summary Judgment on July 6, 2026. Doc. 66. Defendants did not respond.

## LEGAL STANDARD

Even where a party offers no timely response to a motion for summary judgment, the District Court may not use that as a reason for granting summary judgment "without first examining all the materials properly before it under Rule 56(c)." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). Therefore, even though the present motion for summary judgment is unopposed, this Court "must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *Id*. Because Defendants failed to respond, this Court "may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992). "If such evidence supports a conclusion that there is

no genuine issue of material fact, the trial court should determine that the moving party has carried its burden, and" enter judgment accordingly.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Courts do not make credibility determinations or weigh the evidence when deciding a motion for summary judgment. *See Martinez v. Cracker Barrell Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013).

## LEGAL ANALYSIS

### I. Breach of Contract Claim

**A.** As a preliminary matter, Tennessee law governs the contracts at issue. "[A] federal court sitting in diversity applies the choice-of-law rules of the state in which the court sits"—here, Tennessee. *Performance Contracting inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014). By default, "Tennessee follows the rule of *lex loci contractus*," which "provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014). A contractual choice-of-law provision will be enforced if executed in good faith for a reasonable, non-pretextual purpose, provided the chosen state has a material connection to the transaction. *Id*. Here, Defendants executed the contracts in Tennessee, and they have a choice of law provision calling for the

application of Tennessee law to the extent not preempted by "federal law applicable to lender." Pursuant to the contracts, it is undisputed that Tennessee law governs. Docs. 68-4 at 1, 68-5 at 4, 68-6 at 2, 68-8 at 2, 68-9 at 2.

**B.** Under Tennessee law, Plaintiff must prove: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc.*, 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019).

*First*, it is undisputed that Plaintiff entered into enforceable contracts with Mr. Young and Young Financial. "A contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.'" *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005). "A party is presumed to know the contents of a contract he has signed." *Philpot v. Tennessee Health Mgmt., Inc.*, 279 S.W.3d 573, 581 (Tenn. Ct. App. 2007). "The law imparts a duty on parties to a contract to learn the contents and stipulations of a contract before signing it, and signing it without learning such information is at the party's own peril." *Id.*; *see also Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993) (internal citation omitted) ("It will not do, for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.").

The first contract was the secured loan for the purchase money for the Young Financial Sprinter Van signed by Mr. Young on December 24, 2024. Docs. 67 at 2, 68-4, 68-5. The second contract[1] was the unsecured line of credit documented by the Young Financial LOC Note which

---

[1] Both contracts included multiple documents signed by Mr. Young, such as accompanying security agreements granting Plaintiff a possessory interest in the van and personal guarantees to secure the loans.

was also signed by Mr. Young on December 24, 2024. Docs. 67 at 3, 68-8. Without any opposition from Defendants, the facts and exhibits presented by Plaintiff indicate the existence of enforceable contracts entered into willingly by Mr. Young.

*Second*, it is undisputed that Defendants breached the contracts. "A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties" which requires "examining the plain and ordinary meaning of the written words that are 'contained within the four corners of the contract.'" *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013).

> Both contracts state the following shall constitute an event of default:
>
> **Payment Default.** Borrower fails to make any payment when due under this Note.
>
> **False Statements**. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false of misleading at any time thereafter.
>
> **Adverse Change**. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.
>
> **Insecurity**. Lender in good faith believes itself insecure.

Docs. 68-4 at 1, 68-5 at 3, 68-8 at 1. The Young Financial LOC Note also provides that it is an event of default if Young Financial "fails to comply with or to perform any other term, obligation, covenant or condition contained in *any other* agreement between [Trustmark] and [Young Financial]. Doc. 68-8 at 1 (emphasis added).

Here, it is uncontroverted that Defendants failed to make monthly payments on the van loan. Doc. 67 at 3. Defendants also defaulted by failing to purchase a van and therefore misrepresenting the purpose of the loan. *Id*. at 4. The lack of payment and material misrepresentations understandably called into question the value of the collateral pledged by

Defendants and the prospect of payment, leading to a good faith belief Plaintiff was insecure. Therefore, Defendants were in breach of both the Young Financial LOC Note and the Young Financial Van Note.

*Third*, it is undisputed that Plaintiff has been damaged by the breach. Once Defendants were in default, Plaintiff was permitted to and did "declare the entire unpaid principal balance under [the contract] and all accrued unpaid interest immediately due." Docs. 68-4 at 1, 68-5 at 3, 68-8 at 1. Defendants do not dispute that they have failed to pay the note. Doc. 67 at 3. And while the precise calculations will, as discussed below, await a later date, Plaintiff has identified seemingly uncontroverted evidence demonstrating that it has suffered monetary harm caused by Defendants' breaches. *Id*. at 4. Plaintiff has also incurred attorneys' fees and expenses which, according to the loan documents, it is permitted to recover. Docs. 68-4 at 1, 68-5 at 4, 68-6 at 2, 68-8 at 1.

**C.** Mr. Young also signed a guaranty for both the Young Financial LOC Note and the Young Financial Van Note in December 2024. Docs. 67 at 2-3, 68-6, 68-9. Both guarantees state that "Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and Related Documents." Docs. 68-6 at 1, 68-9 at 1. "Indebtedness" is defined in the guaranty as follows:

> All of the principal amount outstanding from time to time and at any one or more times, accrued and unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorney's fees, arising from any and all debts, liabilities and obligations or every nature or form, not existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender ….

*Id*. Because Mr. Young personally guaranteed the Young Financial LOC Note and the Young Financial Van Note, he is personally liable for all sums owed to Plaintiff on behalf of Defendant

Young Financial. Mr. Young presents no objections, and, in any event, is contractually barred from asserting defenses to his liability under the guaranty he knowingly signed. *Id*.

**CONCLUSION**

Pursuant to the plain language of the contract and the summary judgment record before the Court, and bolstered by Defendants' failure to present their own view of the facts, Plaintiff's Motion for Summary Judgment as to Defendants Demetrius Young and Young Financial Solutions LLC (Doc. 66) is **GRANTED** with respect to the issue of Defendants' liability to Plaintiff.

**IT IS ORDERED** that within fourteen days of the entry of this Order, Plaintiff shall file a supplemental brief clarifying the specific remedies sought, including (A) a breakdown of the damages claimed up to the then-current date and any record or legal support for those damages, (B) a clear statement concerning which Defendant is responsible for the various damages, if there is a relevant difference concerning the Defendants' exposure; and (C) an explanation of any non-damages remedies, together with record and legal support, including an argument concerning the proper procedural mechanism for effectuating the remedy. In addition, if Plaintiff continues to seek costs and fees, within fourteen days of the date of this Order Plaintiff **SHALL** submit a motion, supported by any legal and record support, seeking such fees and costs (and any other expenses) and itemizing the amounts claimed. Defendants **SHALL** respond within fourteen days of Plaintiff's filing(s).

This matter is hereby **REFERRED** to the Magistrate Judge for purposes of: (1) conducting at the earliest available opportunity a hearing concerning the remedial issues discussed in the last paragraph (including but not limited to fees and costs), and (2) rendering a Report and Recommendation concerning the appropriate remedies in this case, including but not limited to the precise amounts of any damages awards.

**SO ORDERED**, this 14th day of August.

*s/Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE