**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| TRUSTMARK BANK,<br><br>Plaintiff,<br><br>v.<br><br>TIRE INSTALLATION, LLC, DEWAYNE MITCHELL, YOUNG FINANCIAL SOLUTIONS LLC, DEMETRIUS YOUNG FOSTER LEGACY TRANSPORTATION & LOGISTICS, INC. AND DAV*ID* B. FOSTER,<br><br>Defendants. | ) | Case No. 2:25-cv-02766-BCL-atc |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS DEWAYNE MITCHELL AND TIRE INSTALLATION, LLC**

Before the Court is Plaintiff Trustmark Bank's ("Trustmark") Motion for Summary Judgment as to Defendants Dewayne Mitchell ("Mr. Mitchell") and Tire Installation, LLC ("Tire Installation"). For the following reasons, Plaintiff's Motion is **GRANTED** as to Mr. Mitchell.

## BACKGROUND

Mr. Mitchell owns Tire Installation, LLC. Doc. 64 at 1. On May 24, 2024, Tire Installation and Mr. Mitchell jointly applied to Trustmark to borrow $236,202.50 to purchase two Mercedes-Benz Sprinter cargo vans for work. *Id*. at 1. To support their loan request, Tire Installation and Mitchell provided Trustmark with two retail purchase agreements dated May 21 and May 22, 2024, representing that Tire Installation was purchasing the vans from Auction Permit, LLC ("Auction Permit") for $133,070.50 each, having already paid a deposit of $15,057 on each van. *Id*. at 2.

Trustmark made the purchase money loan, and on May 24, 2024, Tire Installation and Mr. Mitchell executed a promissory note for $236,202.50, payable in monthly installments with a final maturity date of May 24, 2029 ("Tire Installation Van Note"). *Id*. Tire Installation and Mr. Mitchell also executed a Commercial Security Agreement granting Trustmark a security interest in the two Sprinter vans. *Id*. At Mitchell's instruction, Trustmark wired $236,027.50 to Auction Permit for the purchase. *Id*.

On June 17, 2024, Tire Installation applied and was approved for a Business MasterCard, which Mitchell personally guaranteed. *Id*. at 3. Trustmark issued the credit card pursuant to a Business Cardholder Agreement ("Tire Installation Credit Card Agreement"). *Id*.

After making the loan, Trustmark learned that Mitchell also owns Auction Permit, the seller of the vans. *Id*. Trustmark also learned that Auction Permit had purchased the Sprinter vans from Jackson Automotive Group for $59,000 and $60,000 respectively on May 23, 2024—just days after the supposed sales to Tire Installation for $133,070.75 each. *Id*. After learning this information, Trustmark accelerated the balance due on the note, demanded payment, demanded turnover of the vans, and terminated the credit card. *Id*. at 4. Tire Installation and Mitchell turned over the vans, which were sold at private sales for $41,304.87 and $43,879.87, with net proceeds applied to the loan balance. *Id*.

Trustmark subsequently learned that on June 12, 2024, Auction Permit paid Tire Installation $50,000 in loan proceeds. *Id*. Additionally, Tire Installation and Mitchell failed to pay the sales tax and registration fees for the vans, requiring Trustmark to pay $18,120 to secure proper title. *Id*.

As of November 14, 2025, the total amount due on the van loan was $125,290.46, with interest continuing to accrue at a per diem rate of $22.9870433 along with monthly late charges. *Id*. at 5-6. As of October 22, 2025, the balance due on the credit card was $10,813.92. *Id*. at 5.

Plaintiff filed the present Motion for Summary Judgment on July 6, 2026. Doc. 63. Defendants did not respond to Plaintiff's Motion. Defendant Tire Installation is presently subject to default judgment following its failure to secure representation. Doc. 74. In an abundance of caution and because the Court must address Defendant Tire Installation's liability (at least in part) as a prerequisite to Mr. Mitchell's liability as guarantor, the Court addresses Defendant Tire Installation's Liability in this Order.

## LEGAL STANDARD

Even where a party offers no timely response to a motion for summary judgment, the District Court may not use that as a reason for granting summary judgment "without first examining all the materials properly before it under Rule 56(c)." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). Therefore, even though the present motion for summary judgment is unopposed, this Court "must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *Id*. Because Defendants failed to respond, this Court "may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992). "If such evidence supports a conclusion that there is no genuine issue of material fact, the trial court should determine that the moving party has carried its burden, and" enter judgment accordingly.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Courts do not make credibility determinations or weigh the evidence when deciding a motion for summary judgment. *See Martinez v. Cracker Barrell Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013).

## LEGAL ANALYSIS

### I. Breach of Contract Claim

**A.** As a preliminary matter, Tennessee law governs the Tire Installation Van Note and the Van Security Agreement, while Mississippi law governs the Tire Installation Credit Card Agreement. "[A] federal court sitting in diversity applies the choice-of-law rules of the state in which the court sits"—here, Tennessee. *Performance Contracting inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014). By default, "Tennessee follows the rule of *lex loci contractus*," which "provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014). A contractual choice-of-law provision will be enforced if executed in good faith for a reasonable, non-pretextual purpose, provided the chosen state has a material connection to the transaction. *Id*.

Defendants executed the Tire Installation Van Note and the Van Security Agreement in Tennessee, and they have a choice of law provision calling for the application of Tennessee law to the extent not preempted by "federal law applicable to lender." Docs. 65-3 at 1, 65-4 at 4. Pursuant to those contracts, it is undisputed that Tennessee law governs.

The Tire Installation Credit Card Agreement provides that it is governed by Mississippi law. Doc. 65-10 at 3. Mississippi has a material connection to the transaction in that Plaintiff is a Mississippi state-chartered bank with its principal place of business in Mississippi. Doc. 65 at 6. Therefore, Mississippi law applies.

**B.** Under both Tennessee and Mississippi law, Plaintiff must prove: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc.*, 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019); *Favre Prop. Mgmt., LLC v. Cinque Bambini*, 863 So. 2d 1037, 1044 (Miss. Ct. App. 2004).

*First*, it is undisputed that Plaintiff entered into enforceable contracts with Mr. Mitchell and Tire Installation. "A contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.'" *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005). "A party is presumed to know the contents of a contract he has signed." *Philpot v. Tennessee Health Mgmt., Inc.*, 279 S.W.3d 573, 581 (Tenn. Ct. App. 2007). "The law imparts a duty on parties to a contract to learn the contents and stipulations of a contract before signing it, and signing it without learning such information is at the party's own peril." *Id.*; *see also Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993) (internal citation omitted) ("It will not do, for a man to enter into a

contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.”).

Tire Installation and Mitchell both as co-makers, entered into a secured loan contract with Trustmark for the purchase money for the two vans, which was signed by Mr. Mitchell on May 24, 2024. Docs. 65-3, 65-4. Tire Installation also entered into a second contract[1] with Trustmark for a credit card, signed by Mr. Mitchell on June 17, 2024. Doc. 9-10. Without any opposition from Defendants, the facts and exhibits presented by Plaintiff indicate the existence of enforceable contracts entered into willingly by Mr. Mitchell.

*Second*, it is undisputed that Defendants breached the contracts. “A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties” which requires “examining the plain and ordinary meaning of the written words that are ‘contained within the four corners of the contract.’” *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013); *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 759 (Miss. 2003).

The Tire Installation Van Note and the Van Security Agreement state the following shall constitute an event of default:

> **Payment Default.** Borrower fails to make any payment when due under this Note.
>
> **False Statements**. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower’s behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false of misleading at any time thereafter.
>
> **Adverse Change**. A material adverse change occurs in Borrower’s financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.
>
> **Insecurity**. Lender in good faith believes itself insecure.

[1] Both contracts included multiple documents signed by Mr. Mitchell, such as accompanying security agreements granting Plaintiff a possessory interest in the vans and personal guarantees to secure the loan.

Docs. 65-3 at 1, 65-4 at 3. The Tire Installation Credit Card Agreement is considered to be in default if "you give us any false information or signature." Doc. 65-10 at 3. It also provides that Plaintiff "may terminate....[Tire Installation's] credit privileges at any time. However, you will remain liable for all charges until they are paid in full." *Id*.

Here, it is uncontroverted that Defendants misrepresented the purpose of the Tire Installation Van Note, the purchase price of the vans, and the recipient of the loan amount. Doc. 64 at 3. The material misrepresentations understandably called into question the value of the collateral pledged by Defendants and the prospect of payment, leading to a good faith belief Plaintiff was insecure. Therefore, Defendants were in breach of their contracts.

*Third*, it is undisputed that Plaintiff has been damaged by the breach. Once Defendants were in default, Plaintiff was permitted to and did "declare the entire unpaid principal balance under [the contract] and all accrued unpaid interest immediately due." Docs. 65-3 at 1, 65-4 at 3, 65-10 at 3. Defendants do not dispute that they have outstanding balances due on the loan and the credit card. Doc. 64 at 4-5. And while the precise calculations will, as discussed below, await a later date, Plaintiff has identified seemingly uncontroverted evidence demonstrating that it has suffered monetary harm caused by Defendants' breaches. *Id*. Plaintiff has also incurred attorneys' fees and expenses which, according to the loan documents, it is permitted to recover. Docs. 65-3 at 1, 65-4 at 4, 65-10 at 3.

**C.** Mr. Mitchell also signed a guaranty for the Tire Installation Credit Card. Doc. 64-9. The guaranty states that the Guarantor "irrevocably and unconditionally guarantees to Trustmark the full and punctual payment of the entire balance at anime owing on the Account…" *Id*.

Because Mr. Mitchell personally guaranteed the Tire Installation Credit Card, he is personally liable for all sums owed to Plaintiff on behalf of Defendant Tire Installation as to the Tire Installation Credit Card Agreement. Mr. Mitchell presents no objections.

## CONCLUSION

Pursuant to the plain language of the contract and the summary judgment record before the Court, and bolstered by Defendants' failure to present their own view of the facts, Plaintiff's Motion for Summary Judgment as to Defendants Dewayne Mitchell and Tire Installation, LLC (Doc. 63) is **GRANTED** with respect to the issue of Mr. Mitchell's liability to Plaintiff.

**IT IS ORDERED** that within fourteen days of the entry of this Order, Plaintiff shall file a supplemental brief clarifying the specific remedies sought, including (A) a breakdown of the damages claimed up to the then-current date and any record or legal support for those damages, (B) a clear statement concerning which Defendant is responsible for the various damages, if there is a relevant difference concerning the Defendants' exposure; and (C) an explanation of any non-damages remedies, together with record and legal support, including an argument concerning the proper procedural mechanism for effectuating the remedy. In addition, if Plaintiff continues to seek costs and fees, within fourteen days of the date of this Order Plaintiff **SHALL** submit a motion, supported by any legal and record support, seeking such fees and costs (and any other expenses) and itemizing the amounts claimed. Defendants **SHALL** respond within fourteen days of Plaintiff's filing(s).

This matter is hereby **REFERRED** to the Magistrate Judge for purposes of: (1) conducting at the earliest available opportunity a hearing concerning the remedial issues discussed in the last paragraph (including but not limited to fees and costs), and (2) rendering a Report and

Recommendation concerning the appropriate remedies in this case, including but not limited to the precise amounts of any damages awards.

**SO ORDERED**, this 14th day of August.

*s/Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE